*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

ROCHELLE JOANNE BIELBY,

Defendant-Appellant.

UNPUBLISHED
March 5, 2019

No. 340556
Washtenaw Circuit Court
LC No. 16-000548-FH

Before: SWARTZLE, P.J., and MARKEY and RONAYNE KRAUSE, JJ.

PER CURIAM.

Defendant was convicted in a bench trial of assault with intent to do great bodily harm less than murder (AWIGBH), MCL 750.84(1)(a), and assault of a prison employee, MCL 750.197c(1). The trial court sentenced defendant as a third-offense habitual offender, MCL 769.11, to 86 to 240 months' imprisonment for the AWIGBH conviction and to 43 to 120 months' imprisonment for the prison assault conviction. On appeal, defendant argues that the trial court erred in scoring offense variables (OVs) 4, 7, 8, 9, and 19, and that the assessment errors altered the minimum sentence guidelines range thereby requires resentencing. We affirm.

This case arises from an assault that occurred during defendant's incarceration at the Huron Valley Women's Correctional Facility. On October 15, 2015, the victim, a psychologist at the correctional facility, led a group therapy session in a multi-purpose meeting room located within the facility. A video recording from a surveillance camera showed defendant walk over to an open door to the room, remove the doorstop, and close the door. Defendant then ran toward the victim with her arms outstretched and forcefully shoved the victim to the ground. The victim fell on her back and hit her head on the floor. The victim nearly slid into a metal filing cabinet, but put her hand up just in time to avoid hitting it. Defendant herself fell to her knees as a result of the forceful push. Defendant then stood up and moved to the victim's side. Another inmate attempted to intervene and stop defendant, but defendant pushed the inmate aside. Defendant kicked the victim five times in her side and head. Another inmate called for help. Correction officers responded, entered the room and yelled at defendant to stop. Defendant stopped kicking the victim, and the correctional officers subdued defendant and returned her to her cell.

The victim testified that she did not recall much of the incident, and she concluded that she was unconscious at some point. The victim testified that she suffered various injuries, including a traumatic brain injury, nystagmus (involuntary eye movement), dizziness, chronic headaches, bruises, and contusions. The victim also indicated in her victim impact statement that she suffered from positional vertigo as a result of the assault. She described being in pain every day. The victim testified that she returned to work for part of a day after the assault but that she had since been unable to work. After a bench trial, the trial court found defendant guilty of AWIGBH and assault of a prison employee. On appeal, defendant does not challenge her convictions and instead focuses exclusively on her AWIGBH sentence, arguing that the trial court erred in scoring multiple OVs as the scores were based on insufficient or inaccurate information.

Under the sentencing guidelines, the trial court's findings of fact are reviewed for clear error and must be supported by a preponderance of the evidence. *People v Hardy,* 494 Mich 430, 438; 835 NW2d 340 (2013); *People v Rhodes (On Remand)*, 305 Mich App 85, 88; 849 NW2d 417 (2014). Clear error is present when the appellate court is left with a firm and definite conviction that an error occurred. *People v Fawaz,* 299 Mich App 55, 60; 829 NW2d 259 (2012). This Court reviews de novo "[w]hether the facts, as found, are adequate to satisfy the scoring conditions prescribed by statute . . . ." *Hardy,* 494 Mich at 438; see also *Rhodes*, 305 Mich App at 88. In scoring OVs, a court may consider all record evidence, including the contents of a presentence investigation report (PSIR), plea admissions, and testimony presented at a preliminary examination. *People v Johnson*, 298 Mich App 128, 131; 826 NW2d 170 (2012).

The offense of AWIGBH is a Class D felony for purposes of scoring the sentencing guidelines. MCL 777.16d. Defendant was assessed 82 total points with respect to her prior record variables (PRVs), placing her at PRV Level F (75+ points) on the Class D grid. MCL 777.65. Defendant was assessed 135 total points in regard to the OVs, placing her at OV Level VI (75+ points) on the Class D grid. *Id.* Pursuant to the grid and because defendant was sentenced as a third-offense habitual offender, her minimum sentence guidelines range was 43 to 114 months. MCL 777.65; MCL 777.21(3)(b) (upper limit of guidelines range is increased 50% for third-habitual offenders). The trial court imposed a minimum prison sentence of 86 months for the AWIGBH conviction.

With respect to the OV scores being challenged by defendant, the record shows she was assessed 10 points for OV 4, 50 points for OV 7, 15 points for OV 8, 10 points for OV 9, and 25 points for OV 19. We initially note that, even assuming all but OV 7 were scored in error, defendant would still have a total OV score of 75 points, keeping her at OV Level VI. "Where a scoring error does not alter the appropriate guidelines range, resentencing is not required." *People v Francisco*, 474 Mich 82, 89 n 8; 711 NW2d 44 (2006). Nevertheless, we will examine each of the claimed errors.

Defendant first contends that the trial court erred in assessing 10 points for OV 4 because the victim did not suffer serious psychological injury requiring professional treatment. A sentencing court must assess 10 points for OV 4 when a victim suffers "serious psychological injury requiring professional treatment." MCL 777.34(1)(a). MCL 777.34(2) directs a court to "[s]core 10 points if the serious psychological injury may require professional treatment," while also making clear that the failure to actually seek treatment "is not conclusive." Ten points is a

proper score for OV 4 if an offense results in a victim suffering personality changes, depression, anger, fright, or feelings of being hurt, unsafe, or violated, among other possible psychological effects. *People v Gibbs*, 299 Mich App 473, 492-493; 830 NW2d 821 (2013). Posttraumatic stress disorder (PTSD) resulting from a crime can support a 10-point score for OV 4. *People v Bosca*, 310 Mich App 1, 51; 871 NW2d 307 (2015). "[A] court cannot merely assume that a victim has suffered a 'serious psychological injury' solely because of the characteristics of the crime." *People v White*, 501 Mich 160, 165; 905 NW2d 228 (2017).

The trial court found that the assessment of 10 points was proper because it was clear from the record that the victim suffered more than just physical injuries. She patently suffered a mental health or psychological injury. The victim described various physical injuries that resulted from the assault, such as positional vertigo and traumatic brain injury. But she also indicated to the author of the PSIR that the assault "changed her whole life." And the victim informed the trial court at sentencing that the positional vertigo that she regularly experienced was "really disconcerting" and that she obtained workers' compensation disability benefits for PTSD.[1] On this record, the trial court did not err in assessing 10 points for OV 4.

Defendant next argues that the trial court erred when it assessed 50 points for OV 7 because defendant's conduct during the assault did not extend beyond the minimum required to commit AWIGBH and because defendant's conduct was not intended to substantially increase the victim's fear and anxiety.

A sentencing court is required to assess 50 points for OV 7 when a "victim was treated with sadism, torture, excessive brutality, or similarly egregious conduct designed to substantially increase the fear and anxiety a victim suffered during the offense." MCL 777.37(1)(a). At the hearing on defendant's motion for resentencing, the trial court concluded that the 50-point score was proper because defendant acted with "excessive brutality to increase the fear and anxiety of the victim . . . during the offense." The trial court stated that the assault was more than simply brutal, it was excessively brutal. The court reiterated that the evidence showed that defendant engaged in "excessive brutality" during the assault. The trial court's reasoning in support of the score and the finding of excessive brutality was that defendant, after first closing the door to the room and shoving the victim, repeatedly kicked the victim while she was down on the floor and helpless.

In *Hardy*, 494 Mich at 439-440, our Supreme Court observed that there are "four categories of conduct" listed in MCL 777.37(1)(a); the first three of which are "sadism, torture, [and] excessive brutality." The fourth category is " 'conduct designed to substantially increase

---

[1] The victim claimed at the sentencing hearing that she had been informed that she could not obtain benefits based on the traumatic brain injury and the positional vertigo but that she could receive benefits for PTSD. The victim indicated that she was indeed stressed and that benefits were negotiated based on PTSD. These circumstances do not undermine a finding of PTSD. Indeed, the fact that the victim actually received benefits on the basis of PTSD cannot be ignored. Further, considering the nature of the injuries and the serious detrimental impact of the injuries on the victim's life, stress or PTSD would be a likely result.

the fear and anxiety a victim suffered during the offense.' " *Id.* at 440, quoting MCL 777.37(1)(a). The *Hardy* Court devoted its entire analysis to this fourth category. Although the trial court here mentioned that defendant's conduct increased the fear and anxiety of the victim, the court's primary and repeated position was that defendant committed the assault with excessive brutality. Consequently, the analysis in *Hardy* regarding the fourth category under MCL 777.37(1)(a) is not truly relevant in this case, and defendant's entire argument on appeal concerns whether defendant's conduct was designed to substantially increase the victim's fear and anxiety. In sum, defendant fails to address the relevant issue regarding whether her conduct constituted excessive brutality. "When an appellant fails to dispute the basis of a lower court's ruling, we need not even consider granting the relief being sought by the appellant." *Denhof v Challa*, 311 Mich App 499, 521; 876 NW2d 266 (2015).

Regardless of defendant's briefing omissions, we find there was sufficient evidence to support the trial court's determination that defendant engaged in excessive brutality. Defendant initially shoved the victim so hard that she fell on her back, hit her head on the floor, and slid on the ground. With the victim in a physically vulnerable and compromised position on the floor, defendant proceeded to kick her five times in the side and head, causing her to lose consciousness, and to suffer a traumatic brain injury, dizziness, positional vertigo, and other injuries.[2] This evidence easily supported the trial court's determination that defendant's conduct constituted "excessive brutality." There was no scoring error relative to OV 7, and this conclusion alone suffices to reject defendant's entire appeal. We will, however, address defendant's next claim of error.

Defendant next contends that the trial court erroneously assessed 15 points for OV 8 because any movement of the victim was incidental to the assault offense and because she did not hold the victim captive beyond the time necessary to complete the assault offense. A sentencing court is required to assess 15 points for OV 8 when "[a] victim was asported to another place of greater danger or to a situation of greater danger or was held captive beyond the time necessary to commit the offense." MCL 777.38(1)(a).

The trial court focused on the latter provision in OV 8, concluding that there was evidence that defendant held the victim captive beyond the time necessary to commit the offense.[3] Defendant's act of closing the door before assaulting the victim reflected evidence of captivity. It is, however, a closer call with respect to whether the captivity went beyond the time necessary to commit the offense of AWIGBH. Part of the problem is that the end of the "captivity" did not result because of anything defendant did: it ended because of the intervention by prison guards. We can only speculate how long defendant would have kept the victim cornered and under attack had there been no intervention. That said, the evidence showed that

---

[2] Injuries suffered by a victim may be probative of a defendant's intent, but actual physical injury is not an element of or a requirement for AWIGBH. *People v Stevens*, 306 Mich App 620, 629; 858 NW2d 98 (2014).

[3] The prosecution argues that there was also evidence of asportation; however, the court did not address asportation, and we are not permitted to engage in appellate fact-finding.

defendant kicked the victim five times in the side and head, and the first couple of kicks would certainly have supported the AWIGBH conviction. Moreover, a reasonable inference arising from the evidence is that defendant would have continued kicking the victim to some additional extent but for the intervention. We cannot conclude that the trial court erred in assessing 15 points for OV 8. And, even assuming error, defendant's score would remain at OV Level VI; therefore, resentencing would be unnecessary. *Francisco*, 474 Mich at 89 n 8.

Defendant next argues that the trial court erroneously assessed 10 points for OV 9 because defendant only intended to harm the victim, not others in the room. Defendant maintains that although there were other inmates in the group therapy room when she assaulted the victim, the other inmates were not in true danger of injury or death.

A sentencing court is required to assess 10 points for OV 9 if "[t]here were 2 to 9 victims who were placed in danger of physical injury or death . . . ." MCL 777.39(1)(c). Each person who was placed in danger of physical injury or loss of life must be counted as a victim. MCL 777.39(2)(a). Only persons placed in danger of injury or loss of life when the sentencing offense was committed, or during the same criminal transaction, may be considered for purposes of OV 9. *People v Sargent*, 481 Mich 346, 350; 750 NW2d 161 (2008).

Here, there were seven inmates in the group therapy room in addition to the victim and defendant when the assault took place. When defendant pushed one inmate in order to pursue the assault of the victim, she proved that she was prepared to assault others in order to carry out her attack against the victim. A second inmate was within range of defendant's kicks during the assault. The defendant's conduct toward and in proximity to these inmates suffices for assessing 10 points under OV 9. Accordingly, the trial court did not err in assessing 10 points for OV 9. Again, even assuming a scoring error with respect to OV 9, we note that defendant's minimum sentence range would not be altered. *Francisco*, 474 Mich at 89 n 8.

Finally, defendant argues that the trial court erroneously assessed 25 points for OV 19. Defendant contends that OV 19 should have been scored at only 15 points because defendant used force against a person to interfere with prison operations. She did not threaten the security of the prison itself.

A sentencing court is required to assess 25 points for OV 19 when the "offender by his or her conduct threatened the security of a penal institution or court." MCL 777.49(a). A court must assess 15 points for OV 19 when the "offender used force or the threat of force against another person or the property of another person to interfere with, attempt to interfere with, or that results in the interference with the administration of justice or the rendering of emergency services." MCL 777.49(b). An assessment of 25 points is justified when a threat, such as an assault or a fight, originates from the inside of a prison and requires correctional officers to divert their attention from their ordinary duties to respond to the disturbance. *People v Carpenter*, 322 Mich App 523, 530-531; 912 NW2d 579 (2018).

In this case, defendant closed the door to the group therapy room and assaulted the victim, a prison employee. This created a security threat within the prison, diverting the attention of correctional officers from other security duties in order to respond to the disturbance. Defendant's conduct went beyond threats of assault or mere interference with law enforcement

outside the setting of a correctional facility. MCL 777.49(a) specifically contemplates security-threatening conduct in a penal institution. We conclude that the trial court did not err in assessing 25 points for OV 19. Moreover, the 10-point difference ultimately has no bearing on defendant's OV Level. No resentencing is warranted.

We affirm.

/s/ Brock A. Swartzle
/s/ Jane E. Markey
/s/ Amy Ronayne Krause